### KINNEAR MFG. CO. v. WILSON.

(Circuit Court of Appeals, Second Circuit. December 5, 1905.)

#### No. 43.

1. PATENTS—ABANDONMENT OF INVENTION—DESCRIPTION IN ANOTHER PATENT.
   The fact that an invention is described, but not claimed in a patent does not operate as a disclaimer or abandonment of the same, where it is the subject-matter of a pending application by the inventor for another patent.
   [Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 227½.]

2. SAME—ESTOPPEL—PRIOR REJECTION OF CLAIM.
   Pending an application for a patent, and after notice of the rejection of one of the claims, the applicant filed an application for another patent, in which, by a subsequent amendment, he incorporated a claim substantially the same as the one rejected. After the allowance of the last application he formally canceled the rejected claim of the former application. Held, that there was no estoppel or abandonment by such cancellation or the prior rejection of the claim, which precluded him from asserting the validity of the claim as allowed.
   [Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 107.]

3. SAME—INFRINGEMENT.
   The Kinnear patent, No. 572,014, for a fireproof blind, claim 3, was not anticipated, nor abandoned by the proceedings in the Patent Office on an application for another patent by the patentee and discloses invention, although entitled to only a narrow construction. Also held infringed by the structure of the Wilson patent, No. 682,304.

Appeal from the Circuit Court of the United States for the Southern District of New York.

In Equity. Suit for infringement of letters patent, No. 572,014 for a fireproof blind granted to William R. Kinnear November 24, 1896. On appeal from an interlocutory decree for complainant.

Arthur v. Briesen, for appellant.
Edmund Wetmore, for appellee.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

WALLACE, Circuit Judge. This is an appeal from a decree awarding an injunction and ordering an accounting in a suit brought for the infringement of the patent to Kinnear granted November 24, 1896. The assignments of error challenge the validity of the patent and the correctness of the finding of infringement. The defense of want of patentable novelty in view of the prior art is based upon the British patent to Bunnett of November 5, 1852, the British patent to Phillips of December 29, 1852, the United States patent (reissue) to Johnson of April 24, 1855, and the prior patent granted to Kinnear September 24, 1895.

The patent in suit is for a fire-proof metallic curtain, which can be rolled and unrolled, and the claim of which infringement is asserted is as follows:

"(3) A metallic blind or curtain composed of slats having tongues and grooves formed at their opposite edges, shoulders 21, and slits between the edges of the tongues and shoulders, the tongues lying on opposite sides of the general plane of the slat, whereby the slats may be joined by slipping the tongues longitudinally in the grooves and a water-shedding curtain formed, substantially as shown."

The specification need only be referred to so far as it describes the invention of this claim. It states that the opposite longitudinal edges of the slats are bent in opposite directions to form "grooves of rectangular or elliptical hook form" in cross-section. It further states that:

"The end portions of the edges will thus constitute tongues lying on opposite sides of the general plane of the slats, so as to form water-shedding joints at both edges of the same, and the body of the slat will be bent across the mouth of the groove to form a shoulder 21; a small narrow opening being left for the insertion in a longitudinal direction only of the tongue of another similarly formed slat."

If it were necessary to rely upon the verbal description, it would be very difficult if not impossible to comprehend with any degree of precision the features of the invention thus described; but with the aid of the drawings they are made perfectly clear.

The parts together constitute a joint which permits the hingelike movement of the slats upon each other, and the novelty of the invention resides in the peculiar form of these parts. The prior patents of Bunnett and Johnson show joints which are cylindrical; the curved surface of one groove resting against the curved surface of the other, and being in contact throughout a considerable length of their curvatures. In this construction, when the slats are suspended they hang upon curved surfaces of a considerable area, necessarily causing proportionate friction when they are moved, and affording a place for the formation of rust and the accumulation of dust and other foreign matter, which will further impede their freedom of movement. The Phillips patent shows two forms of joint; one like that of the Bunnett and Johnson patents, and another in which the grooves though bent

into a cylindrical form have considerably shorter tongues. The latter seems to be an objectionable form, and has been eschewed by all subsequent inventors. The blows or strains in using the curtain would fall merely on the tongues, so that there is liability that one may be jammed or wedged into the mouth of the other groove and thus destroy the flexibility of the joint; and there is also liability that the joints will pull apart, especially when the curtain is raised or lowered hurriedly. In the patent in suit the interlocking parts do not make contact by extended surfaces except during the operation of raising or lowering the curtain, and when the curtain is in its lowered position each slat hangs on the edge of one of the tongues. During the operation of lowering or raising it however, the form of the groove is such that it abuts against the shoulder of the adjacent slat, and thus not only danger of the separation of the slats is avoided, but the two surfaces are sufficient to resist the shock and strain of the operation.

We think the departure in the form of the patented joint was an advance in the prior art. The joint is more flexible, less liable to become clogged, and easier to operate than the joints of Bunnett or of Johnson; it is more secure and less liable to have the parts pulled apart or jammed together than the joint of Phillips. Its merit has been extensively recognized commercially and has been recognized by the defendant, who makes the alleged infringing shutters pursuant to a later patent granted to him in 1901, in which the joints are practically a copy of those of the patent in suit. As at the time he obtained this patent he had been engaged for over 25 years in the manufacture and sale of rolling metallic shutters, and it was open to him to adopt the joint of the prior art, his adoption of the joint of the patent is quite persuasive evidence of its merit. That the changes of form were not an obvious thing, but involved invention, is shown by the fact that for a period of 40 years since the earlier inventions in metallic shutters no one seems to have conceived of the practicability of the improvement.

The invention is a very narrow one, and the claim of the patent must receive a strict construction. It is quite probable that some of the structures sold by the defendant do not infringe it. Those, however, in which the joint does not substantially depart from the one shown in the defendant's patent do infringe.

Much reliance has been placed in the argument for the appellant upon the prior patent to Kinnear. This patent in its drawings shows substantially the joint of the present patent. Although the joint of the present patent differs from that shown in the earlier patent by having "tongues lying on opposite sides of the general plane of the slats," we are not convinced that both joints are not essentially the same. The earlier patent, however, does not claim the invention claimed in the present patent, and consequently there are not two patents for the same invention. As concededly the date of the invention of the present patent preceded the disclosure made in the earlier patent, we are unable to see what bearing the earlier patent has on the question of the validity of the patent in suit, unless it can be maintained that the patentee

abandoned to the public in the earlier patent the joint which he described but did not claim.

The facts bearing upon the history of the two patents are these: April 6, 1895, Kinnear filed an application for a patent in which he disclosed his peculiar joint. The application contained several claims, among which was one differing but slightly from the third claim of the present patent. While this application was pending, and on June 4, 1895, he filed another application showing the same joint in combination with a slat composed of two thicknesses of metal having an air space between them; the tongues lying on the same side of the general plane of the slats. The second application was granted, and the patent of September 24, 1895, was issued. This patent contains a recital to the effect that it relates to an improvement upon the subject of the application filed April 6, 1895. While the first application was pending in the office various amendments were made to it, some of the claims were rejected, and new claims were inserted; and April 8, 1896, a claim was finally rejected which differed only in unimportant particulars from the third claim of the present patent. Two days after this rejection, Kinnear filed the application for the patent in suit. This application was subsequently amended, and the present third claim of the patent in suit was inserted in lieu of two previous claims. The office then notified Kinnear of the allowance of the application. He then formally canceled the similar claim of the first application, and thereupon the office issued the patent in suit. Subsequently the first application in its amended form was allowed, and on January 19, 1897, the office granted a patent pursuant thereto.

Under these circumstances, we think the third application should be regarded as an amendment to the first, and both should be treated as a single continuing application. However this may be, it is apparent that during the whole period from the filing of the first application to the granting of the patent in suit, Kinnear was insisting upon his right to have a patent for the invention specified in the claim in controversy, and that he never intended to relinquish or abandon it.

It is well settled that an inventor by describing an invention in a patent granted to him, does not preclude himself from patenting it subsequently. His omission to claim what he describes may operate as a disclaimer or an abandonment of the matter not claimed; but it has no such effect when it appears that the matter thus described but not claimed was the subject of a pending application in the Patent Office by him for another patent. This was so decided by this court in Thomson-Houston Electric Co. v. Elmira Railway Co. (C. C.) 71 Fed. 396, and for other adjudications it suffices to refer to Suffolk Co. v. Hayden, 3 Wall. 315, 18 L. Ed. 76, and Barbed Wire Case, 143 U. S. 275, 12 Sup. Ct. 443, 36 L. Ed. 154.

We quite fail to appreciate the argument for the appellant to the effect that in some way the proceedings in the Patent Office amounted to an estoppel or an abandonment precluding the patentee from asserting the validity of the third claim. It is quite unimportant that various claims in both applications were rejected, and the rejection acquiesced in by Kinnear, so long as the office finally granted the

claim which is now in controversy. There is no question here of the construction of the claim, and no attempt to broaden it or to narrow it. Nor does it matter that a claim substantially like the one now in controversy was twice rejected by the office. If the identical claim had been thus rejected, it was nevertheless competent for the office to reconsider its action.

We find no error in the decree, and it is accordingly affirmed, with costs.